**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Ivy Pickens, Jr., ) | CIV 08-1087-PHX-ROS (MHB) |
| Petitioner, ) | **REPORT AND RECOMMENDATION** |
| vs. ) | |
| Dora Schriro, ) | |
| Respondent. ) | |

TO THE HONORABLE ROSLYN O. SILVER, UNITED STATES DISTRICT JUDGE:

On June 9, 2008, Petitioner William Ivy Pickens, Jr., who is confined in the Arizona State Prison Complex-Eyman, filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. #1.) Respondent filed an Answer on November 7, 2008. (Doc. #13.) Petitioner has not filed a traverse/reply to Respondent's Answer.[1]

\\\

\\\

\\\

---

[1] On March 17, 2009, Petitioner filed a "response to: answer to petition for writ of habeas corpus limited to affirmative defenses (2nd requests) for extension" (Docs. ##14, 15), which the Court construes as a request for an extension of time to file a reply to Respondent's Answer. Petitioner requests a 90-day extension of time to file a reply in order to make copies of "100 to 200 pages [of documents] to submit on habeas issue." The Court will recommend that Petitioner's request for an extension of time be denied. Petitioner's request comes over three months past the deadline for filing a reply. Moreover, Petitioner requests the instant extension in order to file numerous documents in support of the merits of his claims. As set forth in greater detail within this Recommendation, however, all of the claims asserted in Petitioner's habeas petition are procedurally defaulted.

**BACKGROUND**

On July 23, 1996, Petitioner was charged in CR1996-07567 with second-degree Burglary, a Class 3 felony, alleged to have been committed on or about July 12, 1996 (the "1996 Case"). (Doc. #13, Exh. A.)

On March 5, 1997, Petitioner pled guilty in the 1996 Case to one count of Theft, a Class 6 felony, pursuant to a plea agreement in which the State agreed that Petitioner would be placed on supervised probation. (Doc. #13, Exh. B at 2, ¶2.) At the change of plea hearing held that same day, the court found that Petitioner "desires to forego the constitutional rights" inherent in a jury trial, that no threats or promises were made and no force was used to induce Petitioner to plead guilty and that Petitioner "understands the range of sentences and other penalties available." (Doc. #13, Exh. C at 5.)

On April 3, 1997, a judgment of conviction on one count of Theft was entered against Petitioner. (Doc. #13, Exh. D at 7.) That same day, the state court suspended the imposition of sentence and placed Petitioner on probation for three years beginning April 3, 1997, in addition to imposing a six-month period of incarceration in the County Jail, beginning on January 1, 1998. (Doc. #13, Exhs. D at 7; E at 11.) Petitioner was also provided with and signed a Notice of Rights of Review After Conviction and Procedure. (Doc. #13, Exh. F.)

On July 15, 1997, shortly after he was placed on probation in the 1996 Case, Petitioner was charged in CR1997-07792 with two counts of first-degree Burglary, Class 2 "dangerous" felonies (Counts 1 and 8); two counts of Kidnapping, Class 2 "dangerous" felonies (Counts 2 and 9); two counts of Aggravated Assault, Class 3 "dangerous" felonies (Counts 3 and 10); three counts of Sexual Assault, Class 2 "dangerous" felonies (Counts 4, 5, and 6); one count of Public Sexual Indecency, a Class 1 misdemeanor (Count 7); one count of second-degree Burglary, a Class 3 felony (Count 11); and one count of Theft, a Class 1 misdemeanor (Count 12) (collectively, the "1997 Case"). (Doc. #13, Exh. G at 15-21.) On August 1, 1997, a Petition to Revoke Probation was filed in the 1996 Case, based on the charges filed against Petitioner in the 1997 Case. (Doc. #13, Exh. H.)

1       On January 28, 1998, a complaint was filed against Petitioner in CR1998-04446
2 charging one count of third-degree Burglary, a Class 4 felony (the "1998 Case"). (Doc. #13,
3 Exh. I.)

4       On June 18, 1998, Petitioner pled guilty in the 1997 Case to (i) one count of Sexual
5 Assault (Count 4); (ii) one count of Attempted Sexual Assault (amended Count 5); (iii) one
6 count of Kidnapping (Count 9); and (iv) one count of second-degree Burglary (Count 11),
7 pursuant to a plea agreement in which the State agreed to dismiss the remaining seven counts
8 (Counts 2, 3, 6, 7, 8, 10, and 12). (Doc. #13, Exh. K at 26-27, ¶3.) In the plea agreement,
9 the parties agreed that Petitioner would be sentenced to (i) the maximum term of 14 years'
10 imprisonment (flat time) on Count 4; and (ii) lifetime probation on amended Count 5. (Doc.
11 #13, Exh. K at 27, ¶2.) The parties reached no agreement on the sentence to be imposed on
12 Counts 9 and 11, but they agreed that any sentence of imprisonment would run concurrent
13 to the term of imprisonment imposed on Count 4. (Doc. #13, Exh. K at 27, ¶2.) The plea
14 agreement specifically provided that the court's duty was "to impose sentence upon
15 [Petitioner], and that any sentence either stipulated to or recommended ... in paragraph two
16 is not binding on the court." (Doc. #13, Exh. K at 28, ¶7.) The court was permitted to reject
17 the plea agreement if it determined that the provisions regarding the sentence or the term and
18 conditions of probation were inappropriate, in which case either party would be permitted
19 to withdraw from the plea agreement. (Doc. #13, Exh. K at 28, ¶7.)

20       On June 18, 1998, Petitioner also entered into a plea agreement in the 1998 Case.
21 (Doc. #13, Exh. L.) Petitioner agreed to plead guilty to one count of third-degree Burglary,
22 a Class 4 felony, in exchange for the State's agreement that he would be sentenced to the
23 presumptive term of 2.5 years' imprisonment, to run concurrently with the sentences imposed
24 in the 1997 Case. (Doc. #13, Exh. L at 29, ¶2.)

25       On the same date, during the change of plea hearing in both the 1997 and 1998 Cases,
26 the court advised Petitioner of the possible sentences for the convictions to which he had
27 agreed to plead guilty, and of "all constitutional rights waived by the Plea Agreement,"
28 including his right to a direct appeal. (Doc. #13, Exhs. M at 31; N at 33.) Based on his

responses to specific questions, the court found that Petitioner "desires to forego the constitutional rights" inherent in a jury trial, that no threats or promises were made and no force was used to induce Petitioner to plead guilty and that Petitioner "understands the range of sentences and other penalties available." (Doc. #13, Exhs. M at 32; N at 34.) Later that day, the court entered an order finding that Petitioner had violated his probation in the 1996 Case, as a result of his guilty pleas in the 1997 and 1998 Cases. (Doc. #13, Exh. O at 36.)

Sentencing proceeded on July 24, 1998, at which time the court entered judgment against Petitioner in the 1997 case on one count of Sexual Assault, one count of Attempted Sexual Assault, one count of Kidnapping, and one count of second-degree Burglary, after specifically finding that Petitioner had "knowingly, intelligently and voluntarily waived his right to a trial," and entered a guilty plea to each count. (Doc. #13, Exh. T at 47-51.) In accordance with the Plea Agreement, the court sentenced Petitioner to (i) a 14-year term of imprisonment on Count 4 (Doc. #13, Exh. T at 48); (ii) a 12.5-year term of imprisonment on Count 9 (Doc. #13, Exh. T at 49); (iii) a 7-year term of imprisonment on Count 11, beginning July 24, 1998 (Doc. #13, Exh. T at 50); and (iv) lifetime probation on amended Count 5 (Doc. #13, Exh. T at 51). Except for the term of lifetime probation, the sentences were all ordered to run concurrently and also concurrent with the sentences imposed in the 1996 and 1998 Cases. (Doc. #13, Exh. T at 48-50.)

In the 1998 Case, the court entered judgment against Petitioner on one count of third-degree Burglary, after specifically finding that Petitioner had "knowingly, intelligently and voluntarily waived his right to a trial" and entered a plea of guilty to that count. (Doc. #13, Exh. U at 55-56.) In accordance with the Plea Agreement, the court sentenced Petitioner to the presumptive 2.5-year term of imprisonment, and ordered the sentence to run concurrently with the sentences imposed in the 1996 and 1997 Cases. (Doc. #13, Exh. U at 56-57.)

At the disposition hearing in the 1996 Case, the state court revoked Petitioner's probation and imposed a two-year sentence of imprisonment. (Doc. #13, Exh. S at 42.) This sentence was ordered to run concurrently to the sentences imposed in the 1997 and 1998 Cases. (Doc. #13, Exh. S at 43.)

1    At the conclusion of sentencing on July 24, 1998, Petitioner reviewed and signed a
2 Notice of Rights of Review After Conviction and Procedure. (Doc. #13, Exhs. P, Q, R.)
3 This Notice informed Petitioner of his right to file a Rule 32 notice of post-conviction relief
4 "**within 90 days of the entry of judgment and sentence**." (Doc. #13, Exhs. P, Q, R)
5 (emphasis original). Petitioner was further informed that, if he failed to file a timely notice
6 of post-conviction relief, he might "never have another opportunity to have any errors made
7 in [his] case corrected by another court." (Doc. #13, Exhs. P, Q, R.)

8 **A.    Petitioner's Petitions for Post-Conviction Relief**

9    On September 30, 1998, Petitioner filed a notice of post-conviction relief ("PCR") in
10 the 1996, 1997, and 1998 Cases (the "First Notice for PCR"). (Doc. #13, Exh. V at 61.) At
11 Petitioner's request, the state court appointed PCR counsel on November 13, 1998. (Doc.
12 #13, Exh. W at 63.)

13    Thereafter, appointed PCR counsel filed a Notice of Completion of Post-Conviction
14 Review By Counsel, indicating therein that no colorable claims for relief were found in
15 Petitioner's three cases, and that this conclusion was reached after reviewing (i) the Superior
16 Court's instruments of record and minute entries; (ii) the June 18, 1998 reporter's transcript
17 from Petitioner's change of plea hearing; (iii) the July 24, 1998 reporter's transcript from
18 Petitioner's sentencing proceeding; and (iv) correspondence from Petitioner. (Doc. #13, Exh.
19 X at 65.) Appointed counsel then requested that Petitioner be given an additional 30 days
20 to file a *pro per* Petition for PCR. (Doc. #13, Exh. X at 66.) On June 1, 1999, the state court
21 granted the request and ordered Petitioner to file a *pro per* Petition for PCR on or before July
22 9, 1999. (Doc. #13, Exhs. Y, Z.)

23    On August 25, 1999, the court granted Petitioner's request to continue the PCR
24 deadline until September 10, 1999. (Doc. #13, Exh. AA.) On September 23, 1999, the court
25 dismissed Petitioner's First Notice for PCR as Petitioner had failed to file either a Petition
26 for PCR or a request for additional time to file a Petition for PCR by September 10, 1999.
27 (Doc. #13, Exh. BB.)
28

- 5 -

1    More than two years later, on May 28, 2002, Petitioner filed a second notice for PCR
2 in the 1997 and 1998 Cases (the "Second Notice for PCR"). (Doc. #13, Exh. CC.) In his
3 Second Notice, Petitioner checked the box indicating that he could assert a claim pursuant
4 to the timeliness exceptions set forth in Ariz.R.Crim.P. 32.1(d), (e), (f), (g), or (h). (Doc.
5 #13, Exh. CC at 72.) Petitioner also checked boxes indicating that his Second Notice for
6 PCR should be excused from the timeliness requirement of Ariz.R.Crim.P. 32.4(a) because
7 (i) his claim for relief was supported by "newly discovered material facts"; (ii) failure to file
8 a timely notice of PCR was not his fault; and (iii) clear and convincing evidence
9 demonstrates that he is "actually innocent." (Doc. #13, Exh. CC at 73.) Specifically,
10 Petitioner alleged that he had recently discovered that he should not have pled guilty to
11 Attempted Sexual Assault (set forth in amended Count 5 in the 1997 Case), because he is
12 actually innocent. (Doc. #13, Exh. CC at 73.)

13    On August 1, 2002, in the 1998 Case, and August 13, 2002, in the 1997 Case, the state
14 court summarily dismissed Petitioner's Second Notice for PCR pursuant to Ariz.R.Crim.P.
15 32.2(b). (Doc. #13, Exhs. DD at 76; EE at 78.) The court determined that, because
16 Petitioner pled guilty to Attempted Sexual Assault in the 1997 Case, he "waived his right to
17 contest the evidence against him," and thus failed the "newly discovered material facts" and
18 "actual innocence" exceptions to the timeliness requirement of Rule 32.4(a). (Doc. #13,
19 Exhs. DD at 75; EE at 77.)

20    More than four years later, on September 26, 2006, Petitioner filed a third notice for
21 PCR in each of the 1996, 1997, and 1998 Cases (the "Third Notice for PCR"). (Doc. #13,
22 Exh. FF at 81.) In his Third Notice for PCR, Petitioner again checked the box indicating that
23 he could assert a claim under the timeliness exceptions set forth in Ariz.R.Crim.P. 32.1(d),
24 (e), (f), (g), or (h). (Doc. #13, Exh. FF at 80.) Petitioner also checked boxes indicating that
25 his Third Notice for PCR should be excused from the timeliness requirement of
26 Ariz.R.Crim.P. 32.4(a) because (i) his claim for relief was supported by "newly discovered
27 material facts"; (ii) the failure to file a timely notice of PCR was not his fault; (iii) a
28 significant change in the law would probably overturn his conviction or sentence; and (iv)

1  clear and convincing evidence demonstrates that he is "actually innocent." (Doc. #13, Exh.
2  FF at 81.) This time, Petitioner alleged that he is "actually innocent" because "his sentence
3  violates the 8th Amendment Rights" set forth in United States v. Booker, 543 U.S. 220
4  (2005), which applies retroactively on collateral review. (Doc. #13, Exh. FF at 81.)

5  On October 19, 2006, the state court summarily dismissed Petitioner's Third Notice
6  for PCR, pursuant to Ariz.R.Crim.P. 32.2(b). (Doc. #13, Exh. GG.) The court found that
7  Petitioner was not entitled to assert a claim for relief under Rule 32.1(g) because Blakely v.
8  Washington, 542 U.S. 296 (2004), only applies to cases "not yet final when the opinion was
9  issued on June 24, 2004." (Doc. #13, Exh. GG.) Since Petitioner's "Rule 32 of-right
10 proceeding was dismissed on September 23, 1999 and became final on that date because he
11 did not seek further review," the court reasoned Petitioner was not entitled to relief under
12 Blakely. (Doc. #13, Exh. GG.) The court further stated that Booker was not applicable to
13 Petitioner's case because "Booker addressed only the federal sentencing guidelines ... ."
14 (Doc. #13, Exh. GG.)

15 One year later, on December 18, 2007, Petitioner filed a fourth notice for PCR in each
16 of the 1996, 1997, and 1998 Cases (the "Fourth Notice for PCR") "pursuant to Rule 32.1(A),
17 (B), (E), and (G)." (Doc. #13, Exh. HH at 84.) Petitioner alleged that (i) he "was never
18 informed [of the] charges in detail" (Doc. #13, Exh. HH at 85); (ii) he "was set up, and could
19 not have known of[] officers['] involvement with mafia" (Doc. #13, Exh. HH at 85); and (iii)
20 the evidence was insufficient to prove sexual assault, attempted sexual assault, and burglary
21 (Doc. #13, Exh. HH at 85).

22 On January 17, 2008, the state court summarily dismissed Petitioner's Fourth Notice
23 for PCR, on the ground that "[n]one of [Petitioner's] claims fall within [the] exceptions to
24 the timeliness requirement" set forth in Rule 32.4(a). (Doc. #13, Exh. II.) The court further
25 concluded that, pursuant to Ariz.R.Crim.P. 32.2(a), Petitioner was "precluded from relief"
26 on each of his claims because such "claims either were or should have been raised in a prior
27 Rule 32 proceeding." (Doc. #13, Exh. II.)

28

1    On January 15, 2008, Petitioner filed a fifth notice for PCR in each of the 1996, 1997, and 1998 Cases (the "Fifth Notice for PCR"). (Doc. #13, Exh. JJ at 90.) In his Fifth Notice for PCR, Petitioner checked the box indicating that he could assert a claim under the timeliness exceptions in Ariz.R.Crim.P. 32.1(d), (e), (f), (g), or (h). (Doc. #13, Exh. JJ at 89.) Petitioner also indicated that his Fifth Notice for PCR should be excused from the timeliness requirement of Rule 32.4(a) because (i) his claim for relief was supported by "newly discovered material facts"; and (ii) clear and convincing evidence demonstrates that he is "actually innocent." (Doc. #13, Exh. JJ at 90.) Petitioner raised four claims: (i) Petitioner was not advised of his rights to have a separate disposition/mitigation hearing; (ii) the judge improperly participated in plea negotiations; (iii) no DNA evidence links Petitioner to the crimes of sexual assault or attempted sexual assault; and (iv) Petitioner's sentence is illegal under Apprendi v. New Jersey, 530 U.S. 466 (2000). (Doc. #13, Exh. JJ at 90.)

On January 31, 2008, the state court summarily dismissed Petitioner's Fifth Notice for PCR on the ground that none of Petitioner's claims involve "newly discovered material fact[s]," and none of Petitioner's "allegations establish his innocence by clear and convincing evidence." (Doc. #13, Exh. KK at 92.) The court also found that Petitioner was "precluded from relief" on each of his claims under Ariz.R.Crim.P. 32.2(a), "because these claims either were or should have been raised in a prior Rule 32 proceeding." (Doc. #13, Exh. KK at 93.)

**B.    Petitioner's Petition for Writ of Habeas Corpus**

On June 9, 2008, Petitioner filed his Petition for Writ of Habeas Corpus. (Doc. #1.) In his Petition, Petitioner challenges his judgment of conviction on July 24, 1998, for Sexual Assault, Attempted Sexual Assault, Kidnapping, and Burglary, entered in the Maricopa County Superior Court in matters "97-07792, 96-07567-CR-98-04446." (Doc. #1.) Petitioner raises the following grounds for relief in his habeas petition: (1) "Ineffective assistan[ce] of counsel"; (2) "[a.] Illegal Sentence.", "[b.] Innocence", "[c.] retaliation"; (3) "Conspiracy"; (4) "Retaliation"; and (5) "Judicial misconduct." (Doc. #1 at 6-10.)

Respondent filed an Answer on November 7, 2008. (Doc. #13.) Petitioner has not filed a traverse/reply to Respondent's Answer.

- 8 -

**DISCUSSION**

In her Answer, Respondent argues that all of Petitioner's claims for relief are unexhausted, and now procedurally barred because Petitioner failed to fairly present these claims to the Arizona Court of Appeals, and any effort by Petitioner to return to the state courts to exhaust said claims would now be futile. In addition, Respondent asserts that all claims for relief are procedurally defaulted because the state court imposed a procedural bar denying relief on the ground that such claims "either were or should have been raised in a prior Rule 32 proceeding." Respondent requests that because Petitioner's procedural defaults cannot be excused, the Court should dismiss the Petition with prejudice.

In the alternative, Respondent contends that the Court lacks jurisdiction to consider any challenges as to the 1996 and 1998 Cases; that the instant habeas petition is untimely by 7 years, 5 months, and 17 days; and that Grounds 2(a) and 5 lack merit because they are based on rules of law that do not apply retroactively to convictions that were final before Apprendi and Blakely were announced.

**A.    Exhaustion and Procedural Default**

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

Proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270, 275-78 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim

1  he urges upon the federal courts."). A claim is only "fairly presented" to the state courts
2  when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim
3  under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000)
4  (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner
5  fails to alert the state court to the fact that he is raising a federal constitutional claim, his
6  federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

A "general appeal to a constitutional guarantee," such as due process, is insufficient to achieve fair presentation. Shumway, 223 F.3d at 987 (quoting Gray v. Netherland, 518 U.S. 152, 163 (1996)); see Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005) ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory."). Similarly, a federal claim is not exhausted merely because its factual basis was presented to the state courts on state law grounds – a "mere similarity between a claim of state and federal error is insufficient to establish exhaustion." Shumway, 223 F.3d at 988 (quotations omitted); see Picard, 404 U.S. at 275-77.

Even when a claim's federal basis is "self-evident," or the claim would have been decided on the same considerations under state or federal law, a petitioner must still present the federal claim to the state courts explicitly, "either by citing federal law or the decisions of federal courts." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000) (quotations omitted), amended by 247 F.3d 904 (9th Cir. 2001); see Baldwin v. Reese, 541 U.S. 27, 32 (2004) (claim not fairly presented when state court "must read beyond a petition or a brief ... that does not alert it to the presence of a federal claim" to discover implicit federal claim).

Additionally, under the independent state grounds principle, a federal habeas court generally may not review a claim if the state court's denial of relief rests upon an independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32. The United States Supreme Court has explained:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run

> around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

Id. at 730-31. A petitioner who fails to follow a state's procedural requirements for presenting a valid claim deprives the state court of an opportunity to address the claim in much the same manner as a petitioner who fails to exhaust his state remedies. Thus, in order to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted, and is generally barred from habeas relief. See id. at 731-32.

Claims may be procedurally barred from federal habeas review based upon a variety of factual circumstances. If a state court expressly applied a procedural bar when a petitioner attempted to raise the claim in state court, and that state procedural bar is both "independent"[2] and "adequate"[3] – review of the merits of the claim by a federal habeas court is barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977) and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

Moreover, if a state court applies a procedural bar, but goes on to alternatively address the merits of the federal claim, the claim is still barred from federal review. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. ... In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.") (citations omitted); Bennett v. Mueller, 322

---

[2] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

[3] A state procedural default rule is "adequate" if it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

1  F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not
2  undermined where, as here, the state court simultaneously rejects the merits of the claim.")
3  (citing <u>Harris</u>, 489 U.S. at 264 n.10).

4  Furthermore, a subsequent "silent" denial of review by a higher court simply affirms
5  a lower court's application of a procedural bar. <u>See</u> <u>Ylst</u>, 501 U.S. at 803 ("where ... the last
6  reasoned opinion on the claim explicitly imposes a procedural default, we will presume that
7  a later decision rejecting the claim did not silently disregard that bar and consider the
8  merits").

9  A procedural bar may also be applied to unexhausted claims where state procedural
10 rules make a return to state court futile. <u>See</u> <u>Coleman</u>, 501 U.S. at 735 n.1 (claims are barred
11 from habeas review when not first raised before state courts and those courts "would now
12 find the claims procedurally barred"); <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1230-31 (9th Cir.
13 2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only
14 when a state court has been presented with the federal claim,' but declined to reach the issue
15 for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally
16 barred.'") (quoting <u>Harris</u>, 489 U.S. at 263 n. 9).

17 In Arizona, claims not previously presented to the state courts via either direct appeal
18 or collateral review are generally barred from federal review because an attempt to return to
19 state court to present them is futile unless the claims fit in a narrow category of claims for
20 which a successive petition is permitted. <u>See</u> Ariz.R.Crim.P. 32.1(d)-(h) & 32.2(a)
21 (precluding claims not raised on appeal or in prior petitions for post-conviction relief, except
22 for narrow exceptions); Ariz.R.Crim.P. 32.4 (time bar). Because Arizona's preclusion rule
23 (Rule 32.2(a)) is both "independent" and "adequate," either its specific application to a claim
24 by an Arizona court, or its operation to preclude a return to state court to exhaust a claim,
25 will procedurally bar subsequent review of the merits of that claim by a federal habeas court.
26 <u>See</u> <u>Stewart</u>, 536 U.S. at 860 (determinations made under Arizona's procedural default rule
27 are "independent" of federal law); <u>Smith v. Stewart</u>, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001)
28 ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in

several cases.") (citations omitted), reversed on other grounds, Stewart v. Smith, 536 U.S. 856 (2002); see also Ortiz v. Stewart, 149 F.3d 923, 931-32 (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32 of Arizona Rules of Criminal Procedure); State v. Mata, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

A review of Petitioner's post-conviction relief proceedings reveals that Petitioner has procedurally defaulted all of the claims asserted in his habeas petition. In Ground 1, Petitioner argues that his counsel was ineffective. (Doc. #1 at 6.) Petitioner alleges that his counsel "never explain[ed] the charges," and coerced him into accepting the plea. (Doc. #1 at 6.) Ground 2 has three subparts: (a) the state court's violation of Petitioner's Sixth Amendment right to a jury trial based on allegations of "excessive sentencing"; (b) insufficient evidence based on the absence of DNA evidence; and (c) retaliation based on Petitioner's alleged involvement in the mafia or organized crime. (Doc. #1 at 7.) Ground 3 seeks relief for "conspiracy," based on Petitioner's allegations that he may have information about "police officer[s]," and does not feel safe in prison. (Doc. #1 at 8.) Ground 4 asserts a claim for "retaliation," based on the allegation that Petitioner reported several incidents of police officer abuse between 1996 and 1998. (Doc. #1 at 9.) In Ground 5, Petitioner claims "judicial misconduct," based on the allegation that other inmates have "received far less sentences" than him. (Doc. #1 at 10.)

Grounds 1 through 5 have not been exhausted because Petitioner failed to present any of these claims to the Arizona Court of Appeals. (Doc. #1 at 6-10.) Moreover, since the time for seeking review by the Arizona Court of Appeals has long expired, see Ariz.R.Crim.P. 32.9(c), Petitioner cannot now return to state court and properly satisfy the exhaustion requirement. Accordingly, because any effort to return to the Arizona Court of Appeals to exhaust his claims would be futile, Petitioner's claims as asserted in Grounds 1 through 5 are procedurally defaulted.

Not only are Petitioner's claims procedurally defaulted as a result of Petitioner's failure to exhaust his claims in state court, but his claims are also procedurally defaulted

because Petitioner presented his claims in state court in a procedurally incorrect manner. Each of the claims alleged in the instant habeas petition were set forth in portions of Petitioner's Second, Third, Fourth, and Fifth Notices for PCR. (Doc. #13, Exhs. CC, FF, HH, JJ.) The state court, however, imposed a procedural bar to avoid reaching the merits of such claims by denying relief pursuant to Rule 32.2(a), Arizona Rules of Criminal Procedure, "because these claims either were or should have been raised in a prior Rule 32 proceeding." (Doc. #13, Exhs. II, KK.) As set forth previously, Petitioner never sought review of the state court decisions.

Rule 32.2(a) of the Arizona Rules of Criminal Procedure constitutes an independent state law ground, see Stewart, 536 U.S. at 860, and the Ninth Circuit has repeatedly determined that Arizona regularly and consistently applies its preclusion rules such that they are an adequate bar to federal review of a claim. See Ortiz, 149 F.3d at 931-32. Thus, Grounds 1 through 5 are procedurally defaulted and federal habeas review is barred unless Petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice to excuse the default.

**B.     Cause and Prejudice or a Fundamental Miscarriage of Justice**

The federal court will not consider the merits of a procedurally defaulted claim unless a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman, 501 U.S. at 750-51; Murray, 477 U.S. at 495-96. Pursuant to the "cause and prejudice" test, a petitioner must point to some external cause that prevented him from following the procedural rules of the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal quotations omitted). Ignorance of the State's procedural rules or other forms of general inadvertence or lack of legal training and a petitioner's mental

1  condition do not constitute legally cognizable "cause" for a petitioner's failure to fairly
2  present his claim.  Regarding the "miscarriage of justice," the Supreme Court has made clear
3  that a fundamental miscarriage of justice exists when a Constitutional violation has resulted
4  in the conviction of one who is actually innocent.  See Murray, 477 U.S. at 495-96.

5  Petitioner has not established cause for his failure to raise these claims in state court,
6  nor has he shown actual prejudice.  Petitioner has also not demonstrated that a miscarriage
7  of justice would result if these issues are not addressed. To the extent Petitioner attempts to
8  assert that his *pro per* status excuses his failure to properly present his claims, the Court is
9  not persuaded.  The law is well-established that a defendant's *pro per* status and lack of legal
10 proficiency do not establish "cause" for his failure to present a federal claim to a state court.
11 See, e.g., Hughes v. Idaho State Board of Corrections, 800 F.2d 905, 909 (9th Cir. 1986);
12 Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir. 1988).

13 Accordingly, Petitioner has procedurally defaulted all of the claims asserted in his
14 habeas petition and, as such, the Court will recommend that these claims be denied.

## CONCLUSION

16 Having determined that all of the claims presented in Petitioner's habeas petition are
17 procedurally defaulted the Court will recommend that Petitioner's Petition for Writ of
18 Habeas Corpus be denied and dismissed with prejudice.

19 **IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of
20 Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1) be **DENIED** and **DISMISSED**
21 **WITH PREJUDICE**;

22 **IT IS FURTHER RECOMMENDED** that Petitioner's "response to: answer to
23 petition for writ of habeas corpus limited to affirmative defenses (2nd requests) for extension"
24 (Docs. ##14, 15), which the Court construes as a request for an extension of time to file a
25 reply to Respondent's Answer be **DENIED**.

26 This recommendation is not an order that is immediately appealable to the Ninth
27 Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
28 Appellate Procedure, should not be filed until entry of the district court's judgment. The

1 parties shall have ten days from the date of service of a copy of this recommendation within
2 which to file specific written objections with the Court.  See 28 U.S.C. § 636(b)(1);
3 Fed.R.Civ.P. 6(a), 6(b) and 72.  Thereafter, the parties have ten days within which to file a
4 response to the objections.  Failure to timely file objections to the Magistrate Judge's Report
5 and Recommendation may result in the acceptance of the Report and Recommendation by
6 the district court without further review.  See United States v. Reyna-Tapia, 328 F.3d 1114,
7 1121 (9th Cir. 2003).  Failure to timely file objections to any factual determinations of the
8 Magistrate Judge will be considered a waiver of a party's right to appellate review of the
9 findings of fact in an order of judgment entered pursuant to the Magistrate Judge's
10 recommendation.  See Fed.R.Civ.P. 72.

11 DATED this 20th day of March, 2009.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge